Next case for argument, Luquin v. Aschroft. Morning. Mr. Gibbs, as you know, we are quite steeped in the Falcon-Carriche arguments and jurisdiction on those points. So what we are most interested in in terms of argument is this SAW permit and the record issue that you raised. Thank you. May it please the Court. My name is Robert Gibbs. I'm representing Jesus Luquin. And in this case, I'm going to focus, as Your Honor requested, on the SAW case. There's very little case law that's really analyzed this because of the convoluted jurisdictional provisions or judicial review provisions. In this case, the Legalization Appeals Unit, or LIU, abused its discretion in denying his SAW claim by not following the controlling statute and case law. First, it failed to apply the statutory requirements on burden shifting for these kinds of applications. Luquin carried his burden of proof by just and reasonable inference, the statutory phrase, and the INS then failed to rebut that just and reasonable inference with specific evidence. Second, it made a credibility determination that was unsupported by specific cogent reasons, the Ninth Circuit case law on credibility determination. And third, it made its determination based on non-record evidence and speculation. The 1986 Farmworker Amnesty statute provided a mandatory form of relief, unlike most forms of immigration relief, which are discretionary. This is a mandatory form of relief for persons who did the requisite farm work in the period May of 87 to May of 88. In his application, he submitted declarations as to two farm work employers. One, Mr. Ramirez, who was a subcontractor for Santa Maria Farms. There was no record of him, but he was an employee of Santa Maria Farms. There were several statements in the record, ER-5 to 7 and ER-15, and from Mr. Castillo at Murrieta Farms at ER-20. The INS rejected his proof based on hearsay reports that though Ramirez admittedly employed some farm workers, he allegedly submitted declarations for many more workers than those he actually employed. So let me ask you this. If we were to agree with you that the determination was based on non-record evidence, including the suppositions or additional information about sort of what they thought was a scam going on in the farm worker world, we would presumably, you know, grant the petition and remand. Is that correct? And would we need to reach these other issues? Because hearsay predicated on the record that you say isn't really part of the record? Here's the problem with that. And normally you would say, yeah, maybe that's the way to go. In this case, remember that this relates to evidence of employment in 1987 and 88. Right. So a remand to allow somebody to sort out or put in more evidence as to farm work employment, for which there's very little records to start with, is really fundamentally unfair. And I want to turn to — Well, but if they had to make it on the record as it existed. I mean, here's our difficulty, because when we try to make certain determinations, the Supreme Court isn't too happy about that. So they're always telling us not to do anything up here, but to send it back and have, you know, the machinations done at BIA or whom — or I guess in this case it's an administrative unit. Well, I think actually this is one of the rare cases, as in Wang and He versus Ashcroft, two cases from this circuit. In He versus Ashcroft, the holding there was the INS should not have repeated opportunities to show that Mr. He is not credible, any more than Mr. He, had he lost, should have an opportunity for remand and further proceedings to establish his credibility. In Wang versus Ashcroft, the court there said remand to determine whether he has met the criteria for eligibility is simply unnecessary. Both of these cases involve mandatory forms of relief, like this one, and both of these cases involve situations where the court reversed the adverse credibility finding. So that would — Was that — tell me how those related time-wise to the Supreme Court case that told us not to do this any more. They were after. They both said this is — they are one of the rare — Exceptions. Rare exceptions to Ventura. Let me stop you right there. Sure. Because you've run right into where I sort of go dead in the water on this case. We're being asked to determine something that relates to facts 18 years old. Exactly. Eighteen years ago, he was working in the fields picking strawberries and weeding strawberries. As I understand the argument in the briefs, if he would have been given his relief, he would have gotten his relief under the act and he would have continued to pick strawberries. Now, I don't know what he's doing. He's been married. Yeah, maybe not. Does he have to continue to pick strawberries to get the relief? No. In the meantime, he's been married, he's got a child and whatever. So we're going back now, I guess you're saying, and if they fail to do the proper thing and if the relief is mandatory, we're just going to give him the relief because they failed, even though this relates to something that happened 18 years ago. There's something wrong. I can't quite pull that all together. Can you explain that? Well, I guess the concept is if a party carries his or her burden of proof and the opposing party fails to rebut, then that party wins, even if it's only now come before the court. They didn't put in any evidence before the board, I mean, the LAU, that is in the record for them to decide on, nor is it in the record that's before the court. All we have is sort of secondhand references and not even very compelling evidence at that. They relied on evidence that's not in the record. Pardon? They relied on evidence that wasn't made part of the record. That's right. Essentially, there were two things. They said there was a declaration signed by Ramirez that said blah, blah, blah. That's not in the record. They said one of our investigators talked to the Santa Maria Berry Farms manager, and she said X, Y, and Z. That's not in the record. What about the intelligence bulletin? What is that? Where does that fit in? That's in the record, but it really doesn't say much other than that Santa Maria Berry Farms has contractors who do the work and employ the employees, and so we know that, and that's undisputed. But the question is, was Leukeen employed by Ramirez, one of the subcontractors? There's nothing in the intelligence bulletin that says Ramirez didn't employ anybody. Well, maybe he employed two people, and the IMS said that some 2,700 had submitted papers. Well, again, that's, of course, just not record evidence. I realize that. But anyway, I think even setting aside the Ramirez evidence or questions about Ramirez, there's the Castillo evidence. There's nothing submitted by the IMS. The only thing they say about Castillo is completely circular. As we mentioned in a similar case, Abdullah, they said just like this, since he was not able to credibly rebut the adverse evidence, the documents he submitted to rebut the adverse evidence are not credible. That's exactly what they're saying. What they're saying was he submits this evidence of working for Ramirez, and they confront him with it's not legitimate or, you know, we've got too many people signing up from there. And now it's time for him to answer, and instead of answering on the merits of that, he says, oh, I was working for Castillo. Well, he doesn't say he. Go ahead. Well, it's just like, in other words, I thought they were saying he wasn't credible because he didn't respond to their other point. Well, he did respond. There is a letter from him saying I can't understand why Ramirez would say that. I did work for him. What is he supposed to do? He doesn't know. They haven't told him we could issue a subpoena to Ramirez to get this. They haven't told him that. He asks on appeal. He asks for the entire administrative record. They don't give it to him. They don't give him these documents that they say they rely on. But anyway. Is it their duty to tell him, is it their duty to tell him sua sponte that they could get a subpoena for him? Well, I think it should be. There's actually, I didn't, there's some case law in other situations that where you have unrepresented people, there's an agency obligation to make some efforts to tell people. I realize they don't have the 2,700 applicants in the record because they didn't put this evidence in. But if they had 2,700 applicants, do they have to tell all 2,700 of them you can get a, you have the right to have a subpoena to find out if you're one of the two people that really work there? I think so. And certainly to see what the declaration says. We don't know. Does the declaration say these are the two people I employed and all the rest of them are phony? We don't know. What happens if we send this back to the agency? You know, if we do it like a, they've had their opportunity and they didn't rebut as evidence, maybe you win right now. But if we do it like they made a procedural error, they relied on something that wasn't submitted in the record, maybe we have to send it back under Ventura. If we, I don't know which way we decide that or if there's other, a different analysis, but if we decide we have to send it back under Ventura, what happens? Well, first of all, I don't think you have to do that because I think the Castillo evidence alone, which for which there's nothing to challenge really is sufficient to make out his, carry his burden of proof. And there's not the other, the problem with no record evidence contrary to Castillo. They don't say they have anything contrary to Castillo. So I think that alone would be sufficient to say, well, that's enough to approve him. Does the Castillo affidavit show the number of man-days he worked? He's supposed to work 90 man-days. 90? It does. It's like 100 and something or? Yeah, there was, well. No, he says he works so much per hour and he worked. It says 52 hours a week. It says he worked January through May of 87 or whatever, which is four months, 120 days. 52 hours a week, it seems to me that's probably eight hours a day, six days a week, plus four hours on Sunday. That's, it gets you to 52. So that is the only requirement he had to fill and he showed it in that affidavit, so just throw the rest out. I think you can duck the rest of it that way. And you, then you ignore the credibility finding or the credibility issues because they didn't send up a record that would support honoring their credibility findings? Yeah, and they didn't, it's credibility findings, of course, have to be supported with specific cogent reasons. Which they didn't have. Which they didn't have. Let's hear from the government. Thank you very much. May it please the Court, my name is Steve Flynn. I'm here on behalf of the Respondent, the Attorney General. As a preliminary matter, addressing the subpoena issue that we were talking about, under the regulations, the agency can and will issue a subpoena if the alien is complaining that his employer is not cooperating and refuses to provide records. We don't have that in this case. In fact, in his reply to the notice of intent denied, the petitioner said, I don't know why Ramirez says I didn't work for him. I am sure he can clarify any questions regarding my employment if you contact him again. So he's not saying that he had any problem. He's just telling the INS, you've got to go out and get those records to verify my employment. And also throwing out the non-record evidence that they're saying is the problem. And that would be the Ramirez declaration and the interview, the synopsis of the interview with the Santa Maria Berry Farms office manager. First off, they're not denying that that evidence doesn't exist. They're just saying, oh, it's not specifically in the record. And that's a pretty good argument, because if we didn't, especially from our perspective on appeal, we only deal with the record. And that's really what was supposed to be dealt with in his case, correct? Yes, that is true. I mean, you don't – is there any ground for our – for us to look at the case and include that evidence when it's not in the record? It just seems such a fundamental administrative law principle and one that is pretty clear also in the immigration field. Well, once again, we're not saying that evidence doesn't exist and it's not in the record, because it's specifically referenced in the notice of intent denied and the notice of denial. The evidence isn't. The statement about it is. Yes, ma'am. Okay. And we're obviously not talking about a problem of a lack of notice or anything like that. Petitioner was specifically informed what the problems were, but – Why don't you just make your argument and assume that you don't have Ramirez and you don't have the interview synopsis? Absolutely. No evidence over there. Even if we take those out, there's still a host of problems with both the Santa Maria Buried Farms application and the Madeira application. First off, as far as the Santa Maria Buried Farms, the dates are inconsistent. Both the petitioner and the affidavit, the alleged affidavit from Mr. Ramirez says he worked 111 mandates. No, no, we don't have the alleged affidavit. Yes, we do, ma'am, from Ramirez. Oh, from Ramirez? Well, not an affidavit. It was just the form that he signed. Okay. Both of them say he worked from May 1, 1985 to October 14, 1986. Worked 111 mandates there. You need 90 mandates in order to qualify. Are you talking about the form? It's called Affidavit of Verification of Past Employment, dated October 17, 1988, signed by Ramirez? On page 58 of the? Yeah, it's ER 58. Right. That's the one. It doesn't say who it is, but it just says that. Right, and that's obviously another problem. It doesn't have his name there. But he alleges 111 days from May 85 to October 86. There's five months in there from May 86 to October 86, which doesn't count for his eligibility for SAW. The relevant statutory time period is you've got to work 90 mandates from May 1, 1985 to May 1, 1986. So he alleges 111 days for a period of time that includes five months over the statutory eligibility period. So there's a problem right there. When did he work those 111 mandates? If he worked, I mean, it would require speculation to figure, okay, he worked it from May 85 to May 86. But all he says is I worked 111 days from May 85 to October 86. So that's a problem right there. Also, within the record, all you have to do is compare the signatures of Juan Ramirez. Those are patently different. And even though they were notarized by the same guy, the two signatures are obviously? He's comparing it which to which now, I think. That would be comparing from the excerpts of record for the SAW application, page 11 and 58. Page 11. Oh, well, that's their excerpts of record. I'm going off the administrative record. Okay. You're talking about what's called the Ramirez-Strawberry affidavit, CR 11? I've been associated with Santa Maria Farms since 1979. During this period, we've been? Absolutely. I don't know. Am I supposed to? You're saying that it's so obvious that they're not the same? Absolutely. Okay. Assuming we're looking at the same one, I mean, all you have to do is compare the signatures of Juan Ramirez. All you have to do is just look at the R. I mean, the R is entirely different. And where is that in the decision? What's that, ma'am? Where is that in the decision? That's not specifically referenced in the decision. No. I'm just pointing out things. No, no, no. But wait. I feel like we're in this very tough case. First, we have all this record evidence, and we have this evidence that's not in the record. Now we have something that's in the record, but we're not here as a fact finder. We're not here to decide if the R's look alike. I mean, that doesn't seem to me to be our role. What I'm doing, ma'am, is right now listing out all the numerous problems there are as far as the credibility and why. Is that a basis for the credibility finding? The R? The different signatures? Well, to a certain extent it is, because the RPF and the LAU both referenced the fact that Ramirez said, hey, a number of people are forging my signature. And you can't rely on anything that's submitted bearing my name, and it should be considered null and void. And that's just an example. I thought that one was not in the record. That affidavit is not in the record.  But you see, I feel like Swiss cheese here. Do you know what I'm saying? I mean, the real question is that we can't reconstruct the record. And, you know, obviously you didn't create it either, so we're not suggesting you did anything improper. But we're trying to figure out what's the record on which we base our decision, and you keep mixing and matching as they did in the administrative procedure. Another way to – another slant on it, maybe I'm being over-simplistic, is what's in the record that the agency said they relied on? So I don't want to know what's not in the record that they said they relied on or what's in the record that they didn't say they relied on. What's in the record that they said they relied on? Or maybe we're not limited to that, but let's start with that. Well, what I'm – I guess what I'm saying is, in a broad sense, they said there's problems with the Santa Maria Berry Farms affidavit, and they listed a number of reasons why. These are – I mean, you've got to look – looking at the record as a whole, these are some additional problems. While maybe they didn't specifically reference them, these are problems that nonetheless contributed to undercutting the – undercutting the validity or the reliability. How do you know that those other problems were in their mind or contributed to it if they didn't say it? How can – I mean, maybe you could argue to them, if you were before them, these other problems should lead you to decline to find this person credible. But how can you say that the board – that that's what they relied on? Can we look for any evidence in the record – can we look for any evidence in the record that might have supported that? Is that the standard? No, that's definitely not the standard. We've got to go on what the – what the – what the LAU specifically stated. But positing that, yes, I would – the record would be more complete if, in fact, those two other statements were in there. Why they were not included as far as Ramirez, I can only speculate, because with Ramirez, we're talking about – so what is – I mean, the INS stated, hey, we've received 2,700 applications for this one-year period. Is that something they can rely on? Absolutely. This is the agency stating we have received this many applications. It's the agency issuing the decision. So does there have to be a separate piece of paper there saying, well, we've received 2,700? At some point, you have to say the agency – it's not so much taking administrative notice of these facts. It's a fact that exists out there. Okay. I think your time has expired, but I think – and we have your point in mind. So really what we're going to have to do – to be honest, your time has expired and we've let you go over. We're going to have to chart the evidence, basically, and we will do that carefully because we have in mind your argument about how we ought to do that. So I have a half-minute rebuttal left on the petitioner's side. Thank you very much. Thank you. Sir, I was looking at the notice of intent to deny, and the majority of it is referencing material that's not in the record. Yes. But there's one final paragraph that's interesting that you might want to help me with, and that is the final paragraph says that you have failed to establish that you engage in seasonal agriculture employment, nor can it be reasonably inferred that you work the number of mandates as claimed in your application. As is any other credible documentation or additional corroborative evidence, your application will be denied. Now, where would you say there is the evidence of the proper number of mandates claimed in the application? Because I don't think the Marietta Farms is in the application, right? That's right. One of the odd things about the SAW statute – and I know this is cited in the brief – in other words, you can continue to submit other documentation to support your claim up until that decision. I'm sorry. For the notice of decision that was submitted? Yes. Yes, it was. All right. So if we look at – if we throw out everything in the notice of intent to deny that doesn't work because it's not substantiated, if we look to the record to see if there's enough man hours, if we look then at the notice of decision and see that Marietta came in between, then we can rely on Marietta. If we throw out those documents, we can infer negative or aligned credibility because of Berry Farms, and that's where you get to. Is that it? That's right. Your time has expired. Thank you. Could I just make one question? No, I think we have everybody's point in mind. All right. Everybody always wants to make one additional one, and we appreciate it, but we have your arguments in mind. Plus, we have good briefing from both sides on this. The case of Lukland v. Ashcroft is submitted. The next case for argument, United States v. Gord.
judges: Brunetti, McKeown, Gould